J-S37028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT LASSITER | : | |
| | : | |
| Appellant | : | No. 3081 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 25, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010473-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT LASSITER | : | |
| | : | |
| Appellant | : | No. 3082 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 25, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010472-2015

BEFORE:  SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:  **FILED DECEMBER 23, 2020**

Appellant Albert Lassiter appeals from the judgment of sentence imposed following his convictions for rape of a child and related offenses.[1] Appellant challenges the trial court's evidentiary rulings on hearsay testimony

---

[1] 18 Pa.C.S. §§ 3121(c), 3123(b), 6318(a)(1), 4304(a)(1), 6301(a)(1)(ii), 3126(a)(7).

and also argues that the trial court erred by denying his motion to sever and his motion for a mistrial. We affirm.

We adopt the summary of facts set forth in the trial court's opinion. *See* Trial Ct. Op., 6/13/19, at 1-3. Briefly, Appellant was charged with three counts of rape of a child and related offenses based on allegations that he sexually abused his two biological daughters, T.L., A.L., and his girlfriend's daughter, M.P.B. All three complainants were under the age of thirteen at the time of the alleged abuse. *Id.*

The Commonwealth moved to consolidate the charges for trial, arguing that the evidence of each offense would be admissible in separate trials "because the similarities between the various incidents reveal a common plan or scheme" by Appellant. Commonwealth's Mot. to Consolidate, 12/7/16, at 4. Appellant moved to sever, arguing that the charges were not sufficiently similar and that a joint trial would result in undue prejudice. *See* N.T. Pretrial Hr'g, 12/20/17, at 3. Following a hearing on December 20, 2017, the trial court denied Appellant's motion.

On January 10, 2018, the trial court conducted a hearing on the Commonwealth's request to admit A.L.'s testimony under the Tender Years exception to the hearsay rule. At the hearing, the trial court heard testimony from A.L., along with her mother, Ms. B., and Ms. P., a family friend to whom A.L. initially reported the abuse. N.T. Tender Years Hr'g, 1/10/18, at 1-9, 12-47. At the conclusion of the hearing, the trial court found that A.L. was "unavailable" for purposes of the Tender Years exception, in that she "did

- 2 -

suffer serious emotional distress [that] substantially impairs her ability to reasonably communicate." *Id.* at 11. Additionally, the trial court concluded that based on the testimony from Ms. B. and Ms. P., "the hearsay statements are both reliable and relevant." *Id.* at 48.

At trial, the Commonwealth made two attempts to present M.P.B. as a witness. *See* N.T. Trial, 1/10/18, at 119, 186. Both times, M.P.B. became agitated and refused to answer questions about the abuse. *Id.* The Commonwealth then filed a motion to conduct M.P.B.'s direct examination at a separate location via closed-circuit television. N.T. Trial, 1/11/18, at 6. Appellant opposed the Commonwealth's motion and also requested a mistrial, arguing that M.P.B. had already refused to testify, but was then "dragged back in the courtroom" while the jury heard her "screaming . . . in the hallway." *Id.* at 7. The trial court denied Appellant's motion for a mistrial and granted the Commonwealth's motion to conduct direct examination outside of the courtroom. *Id.* at 43. Ultimately, after M.P.B. again refused to testify regarding the abuse, the trial court granted Appellant's motion for judgment of acquittal on those charges. *Id.* at 128.

During closing argument, the Commonwealth made a reference to T.L.'s testimony about the allegations involving M.P.B. N.T. Trial, 1/12/18, at 70. Appellant objected and the trial court held an off-the-record discussion. *Id.* at 71. After the Commonwealth's closing statement, Appellant moved for a mistrial and explained:

I'm objecting and moving for a mistrial for two reasons: On the behavior of the witnesses both in terms of putting [M.P.B.] up three times; in terms of the jury hearing [M.P.B.] crying, kicking[,] and, you know, we could hear that when she was in the hallway. And then again with the witnesses, you know, loudly crying only when the Commonwealth is closing, not when I'm closing, and then leaving and making extremely loud vomiting noises from the anteroom.

I think that the prejudice goes to both of that. And of these trials remaining combined when there was absolutely no evidence of [M.P.B.], [M.P.B.] did not testify, you know, I think a mistrial should have been granted before, so I'm renewing my motion on that. And on the behavior of the witnesses in the courtroom is overly prejudicial in terms of what the jury has now seen.

*Id.* at 89-90.

The trial court denied Appellant's motion for a mistrial. *Id.* at 90. However, Appellant and the Commonwealth agreed to a curative instruction regarding M.P.B. *Id.* at 94. Specifically, the trial court stated:

You heard opening statements and some testimony regarding a third complainant, [M.P.B]. [M.P.B.] did not testify at this trial and you are not being asked to resolve any allegations regarding [M.P.B.]. You must not consider any evidence related to what you heard about [M.P.B.], or her demeanor on the stand and refusal to testify as evidence that [Appellant] committed the remaining charges involving [A.L.] and [T.L.].

*Id.* at 105.

That same day, the jury convicted Appellant of all charges involving T.L. and A.L. *Id.* at 131-35. On May 25, 2018, the trial court sentenced Appellant to an aggregate term of twenty-eight to sixty years' incarceration. Appellant filed a post-sentence motion, which the trial court denied. Appellant subsequently filed a timely notice of appeal at each trial court docket number

and a court-ordered Pa.R.A.P. 1925(b) statement.[2]  The trial court issued a

Rule 1925(a) opinion addressing Appellant's claims.[3]

_____

[2] In his Rule 1925(b) statement, Appellant preserved his instant claims regarding the motion to sever and the trial court's admission of A.L.'s testimony under the Tender Years hearsay exception.  *See* Rule 1925(b) Statement, 11/13/18, at 1-2.  Appellant also raised a claim that the trial court erred by denying his motion for a mistrial "following the Commonwealth['s] closing arguments to the jury."  *Id.* at 2.

Additionally, Appellant argued:

> Th[e trial c]ourt erred by (i) permitting hearsay testimony into the record, (ii) permitting evidence of other acts into the record, in violation of Rule 404(b) of the Rules of Evidence, and (iii) violating Appellant's right to confront the witnesses against him, secured by the Pennsylvania and United States Constitutions, by:
>
> > a. allowing [L.P.] to testify;
> >
> > b. allowing Carolina Castano, of the Philadelphia Children's Alliance, to testify that she interviewed M.P.B., a minor;
> >
> > c. allowing Police Officer Kenya Washington to testify that, based on information received from [L.P.], he contacted the Special Victims Unit; and
> >
> > d. allowing Detective Mark Webb to testify that he received a report of "an alleged child sexual assault" while at the home of M.P.B. and her mother, [L.P.]
>
> By allowing each of these witnesses to testify as they did — over defense objections — the [trial c]ourt allowed the Commonwealth to make clear that M.P.B. made complaints of sexual assault by Appellant, though M.P.B. never said as much on the record.

*Id.* at 2.

[3] The trial court concluded that Appellant failed to properly preserve his claim regarding M.P.B.'s hearsay statements, as he did not "identify which allegation of error correspond[ed] to each piece of testimony" in his Rule 1925(b) statement.  *See* Trial Ct. Op. at 11.  Therefore, the trial court declined to address the merits of that issue.  *Id.*

On appeal, Appellant raises the following issues for our review:

1. Did the [trial] court err in denying Appellant's motion to sever the matters regarding the three complaining witnesses?

2. Did the [trial] court err in permitting multiple witnesses to offer "course of conduct" hearsay in order to allow the Commonwealth make clear that [M.P.B.] made an allegation of sexual assault against Appellant, even though there was no such substantive evidence of that claim?

3. Did the [trial] court err in finding that [Ms. B. and Ms. P.] could testify as to out-of-court statements made to them by A.L., where the statements did not fall within the Tender Years Act?

4. Did the [trial] court err in denying a mistrial where the prosecutor, in her closing remarks, purposefully embellished the testimony regarding [M.P.B.]?

Appellant's Brief at 4-5 (full capitalization omitted).

**Motion to Sever**

In his first issue, Appellant argues that the trial court erred in denying his motion to sever. *Id.* at 16. Specifically, Appellant argues that the charges involving M.P.B. "stood in stark opposition of those of T.L. and A.L." *Id.* at 19. He contends that "[t]he allegations were not of such a great similarity to permit the proofs of one to be introduced at a trial on the other[s]." *Id.* at 20. Appellant also asserts that the trial court's "decision to combine the cases for trial infected the case with confusion that inevitably led to Appellant suffering undue prejudice." *Id.* at 21. Appellant argues that "no reasonable juror" could separate M.P.B.'s allegations from the substantive charges involving the other two complainants. *Id.* at 22. Further, Appellant claims that the "Commonwealth three times paraded M.P.B. before the jury only to

have the child shut down before Appellant's counsel had an opportunity to question her. Essentially, the Commonwealth was able to present a child that appeared to be suffering some anguish, and with a wink and a nod, that M.P.B. made allegations of sexual assault." *Id.* at 23. Under these circumstances, Appellant argues that the trial court abused its discretion by denying his motion to sever.

The Commonwealth responds that the trial court properly consolidated the cases against Appellant. Commonwealth's Brief at 15. The Commonwealth asserts that "[t]he evidence of [Appellant's] crimes would have been admissible in separate trials to show [his] common scheme, plan, or design" under Pa.R.E. 404(b)(2). *Id.* at 17. Further, the Commonwealth argues that "[t]he trial court's instructions ensured that the jury would use the evidence of the other cases only for its admitted purpose, and thus prevented any potential prejudice from the consolidation." *Id.* at 24. Finally, the Commonwealth contends that Appellant's "claim of prejudice is based only on M.P.B.'s inability to testify at trial due to her emotional difficulty. Yet the trial court could not have predicted that M.P.B. would not be able to testify at trial when it made its pre-trial ruling on [Appellant's] motion to sever." *Id.* at 24-25.

"Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion." *Commonwealth v. Brookins*, 10 A.3d 1251, 1255 (Pa. Super. 2010) (citations omitted). "The

critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever.  The appellant bears the burden of establishing such prejudice." **Commonwealth v. Dozzo**, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted and some formatting altered).

Pursuant to Rule 582 of the Pennsylvania Rules of Criminal Procedure, "[o]ffenses charged in separate indictments or informations may be tried together if . . . the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion."  Pa.R.Crim.P. 582(A)(1).

Additionally, Rule 583 provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together."  Pa.R.Crim.P. 583.  However, "[u]nder Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." **Dozzo**, 991 A.2d at 902 (citation omitted).

This Court has set forth the following three-part test for evaluating whether joinder is appropriate in matters involving different acts or transactions:

> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Brookins***, 10 A.3d at 1256 (citations omitted).

The trial court's "initial determination of admissibility is critical to the court's disposition of the severance motion; thus, the evidence must be weighed in no less rigorous a fashion than if it were proffered for admission at trial." ***Id.*** (citation omitted). Of relevance to this case, Pa.R.E. 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Second, the trial court must determine whether joinder would pose a danger of confusing the jury. ***Brookins***, 10 A.3d at 1256. Our Supreme Court has held that where the criminal offenses at issue are distinguishable in time, place and parties involved, a jury is capable of separating the evidence. ***See Commonwealth v. Collins***, 703 A.2d 418, 423 (Pa. 1997).

Finally, the trial court must evaluate whether joinder would unfairly prejudice the defendant. ***Brookins***, 10 A.3d at 1256; ***see also*** Pa.R.Crim.P. 583. This Court has explained that

> [t]he prejudice of which Rule 583 speaks is . . . that which would
> occur if the evidence tended to convict the [defendant] only by
> showing his propensity to commit crimes, or because the jury was

- 9 -

incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Dozzo*, 991 A.2d at 902 (citation omitted).

Here, the trial court addressed Appellant's severance claim as follows:

[T]he Commonwealth sought to consolidate three cases involving sexual abuse committed by [Appellant] against his two daughters, T.L. and A.L., and [Appellant's girlfriend's] daughter, M.P.B. Each victim was a young female under thirteen years of age. These incidents occurred during approximately the same time period, from July 2013 until August 2015. They took place in [Appellant's] residences while the victims were in his care. Furthermore, the assaults typically took place at night. The similarities shared by these cases evidence a common scheme, and each offense would have been admissible in a separate trial for the others. Moreover, the evidence was capable of separation by the jury because the assaults took place at different times and involved different victims. Finally, any potential prejudice impact from the introduction of this evidence did not outweigh the probative value. The [c]ourt gave the following instruction to the jury:

In this trial, two cases[4] have been consolidated to be tried together. The law permits this joint trial because evidence of one case would be admissible in the trial of the other case as relevant to [Appellant's] common plan, scheme, or design. [H]owever, each case is separate and distinct. You should consider the cases as separate individual cases and the evidence and the law I give to you as it relates to each case just as you would in each case alone having been tried before you. Once again, you [are] trying two separate cases at one time. For this reason, you have to pay special attention to the evidence so as to be able to properly segment it. You can consider with respect to each offense the evidence presented in support of the other offense for the limited purpose of establishing [Appellant's] common

_____

4 As noted previously, the trial court granted Appellant's motion for judgment of acquittal on the charges relating to M.P.B.

> plan, scheme, or design. You must not regard this evidence as showing that [Appellant] is a person of bad character or has criminal tendencies from which you may be inclined to infer guilt. If you find [Appellant] is guilty, it must be because you are convinced by the evidence by proof beyond a reasonable doubt that he committed each and every element of the crimes charged.
>
> In her opening statement, the prosecutor also noted the reason for consolidation of the cases. Therefore, [the trial c]ourt did not abuse its discretion in granting the Commonwealth's motion to consolidate and denying [Appellant's] motion to sever.

Trial Ct. Op. at 5-6 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion to sever. *See Brookins*, 10 A.3d at 1255. The trial court properly concluded that the evidence of each offense would be admissible in a separate trial for the other offenses, as it tended to establish Appellant's common plan or scheme. *See id.*; *see also* Pa.R.E. 404(b)(2). Further, the evidence was separable by the jury, as the crimes occurred on different dates and involved different victims. *See Dozzo*, 991 A.2d at 902; *see also Collins*, 703 A.2d at 423. Finally, we agree with the trial court that Appellant failed to establish undue prejudice. *See Brookins*, 10 A.3d at 1256; *see also Commonwealth v. Judd*, 897 A.2d 1224, 1232 (Pa. Super. 2006) (concluding that the appellant was not prejudiced by the trial court's consolidation of his two cases, where the evidence "constituted an ongoing course of extremely similar sexual abuse against two youthful victims," and was separable by the jury). Accordingly, Appellant is not entitled to relief on this claim.

## Course of Conduct Hearsay Evidence

In his next claim, Appellant argues that the trial court erred in permitting several witnesses to testify about allegations involving M.P.B. through "course of conduct" hearsay testimony. Appellant's Brief at 23. However, as discussed previously, the trial court found that Appellant waived this claim, as his Rule 1925(b) statement did not identify "which allegation of error correspond[ed] to each piece of testimony," which precluded the court from conducting meaningful review. Trial Ct. Op. at 11; *see also* Pa.R.A.P. 1925(b)(4)(ii) (requiring that a Rule 1925(b) statement "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"). Based on our review of the record, we agree that Appellant's claim is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in a Rule 1925(b) statement are waived"); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Therefore, we decline to address it on appeal.

## Tender Years Exception

Appellant next argues that the trial court erred by allowing Ms. P. and Ms. B. to testify regarding A.L.'s hearsay statements under the Tender Years exception. Appellant's Brief at 31. Appellant asserts that although A.L. was "uncomfortable testifying," it "was not proven to be linked to emotional distress. Indeed, neither of the two adult witnesses at the hearing testified as to any emotional distress." *Id.* at 34. Therefore, Appellant concludes that

- 12 -

there was insufficient evidence to prove A.L.'s unavailability for purposes of the Tender Years exception. *Id.*

Additionally, Appellant argues that the Commonwealth failed to establish that A.L.'s out-of-court statements were sufficiently reliable. *Id.* He asserts that Ms. B. "testified to a substantial amount of uncertainty regarding the statements made . . . by A.L." and "[Ms. P.]'s testimony left unclear whether or not A.L. was disclosing after she learned her sister, T.L., had disclosed, or what kind of questions [Ms. P.] posed to A.L." *Id.* at 34. Therefore, Appellant concludes that the trial court erred in admitting A.L.'s statements.

The Commonwealth responds that at the Tender Years hearing, "A.L. did not provide responses to questions about the abuse and instead looked down. When asked to identify [Appellant], A.L. began 'breathing heavily in and out' and began to cry." Commonwealth's Brief at 33. Further, the Commonwealth argues that contrary to Appellant's claim, both Ms. B. and Ms. P. provided testimony relating to A.L.'s emotional distress. *Id.* Specifically, the Commonwealth notes that both Ms. B. and Ms. P. stated that when asked about the abuse, A.L. "responded exactly as she did at the hearing—by looking down and playing with her fingers." *Id.* Under these circumstances, the Commonwealth contends that "[t]he trial court was in the best position to evaluate A.L.'s emotional distress at the hearing, and its finding that A.L. was unavailable to testify at trial was not an abuse of discretion." *Id.*

With respect to Appellant's claims regarding reliability, the Commonwealth responds that Ms. B. "did not exhibit uncertainty that the sexual assault occurred or about the specific acts described" but instead expressed uncertainty about when A.L. told Ms. B. about each detail of the abuse. *Id.* at 34. The Commonwealth also asserts that contrary to Appellant's contention, Ms. P. "specifically testified that she asked A.L., 'Is anything happening to you? Are you going through anything? Did anybody touch your private areas?'" *Id.* at 35. Under these circumstances, the Commonwealth concludes that "the trial court did not abuse its discretion by concluding that the consistent and detailed testimony from [Ms. B.] and [Ms. P.] about A.L.'s allegations was relevant and reliable." *Id.*

"[Q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa. Super. 2005) (citation omitted). Likewise, we apply an "abuse of discretion" standard when reviewing admission of statements under the tender years exception. *Commonwealth v. Curley*, 910 A.2d 692, 697 (Pa. Super. 2006) (citation omitted).

"Generally, an out-of-court statement is inadmissible at trial unless it falls into one of the exceptions to the hearsay rule." *Hunzer*, 868 A.2d at 510; *see also* Pa.R.E. 803. One such exception is the Tender Years exception, which "allows for the admission of a child's out-of-court statement due to the

- 14 -

fragile nature of young victims of sexual abuse." ***Commonwealth v. Fink***, 791 A.2d 1235, 1248 (Pa. Super. 2002) (citation omitted).

The Tender Years exception to the rule against hearsay provides, in relevant part, as follows:

**(a) General rule.—**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated . . . , not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

**(a.1) Emotional distress**.—In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

42 Pa.C.S. § 5985.1.

"Even though the Act does not mandate the type of evidence upon which the court must rely, it does require that some concrete evidence of serious emotional distress be presented." *Fidler v. Cunningham-Small*, 871 A.2d 231, 238 (Pa. Super. 2005). "[I]n the absence of expert witnesses, the trial court's *in camera* examination of the child is the better practice in order to insure that the determination of unavailability is well-founded." *Id.*

Additionally, this Court has explained:

The factors to be considered by a trial court in determining whether the child declarant was likely to be telling the truth when the statement was made include:

(1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate.

*Hunzer*, 868 A.2d at 510 (citation omitted).

Here, the trial court addressed Appellant's claim as follows:

The [trial c]ourt conducted an *in camera* hearing on January 10, 2018, immediately preceding the commencement of trial, during which A.L., [Ms. B.], and [Ms. P.] testified. Th[e trial c]ourt determined A.L.'s statements to [Ms. B.] and [Ms. P.] regarding the sexual abuse were reliable and relevant. This [c]ourt also found that A.L. was unavailable to testify based on "serious emotional distress [] substantially impair[ing] her ability to reasonably communicate."

[Appellant] alleges that A.L. was not unavailable to testify. At the start of the hearing, the prosecutor asked A.L. if she recognized [Appellant]. She responded that she did. When asked to identify him, however, A.L. began to cry and look down. It took several more attempts by the prosecutor before A.L. could point out [Appellant] in the courtroom. Though A.L. was able to give appropriate answers to a number of questions, she was unable to communicate about the sexual abuse. Instead, A.L. looked down

- 16 -

and was unresponsive. [Ms. B.] also testified that when she first asked A.L. whether she had been touched inappropriately, A.L. "put her head down and started playing with her fingers." Similarly, [Ms. P.] testified that in response to questions, A.L. did not immediately respond and looked down. After observing A.L. inside the courtroom and hearing from [Ms. B.] and [Ms. P.], this [c]ourt concluded that A.L. was unavailable to testify due to serious emotional distress that would substantially impair her ability to reasonably communicate.

[Appellant] also alleges that the out-of-court statements made by A.L. to [Ms. B.] and [Ms. P.] were not sufficiently reliable. . . .

On August 13, 2015, after speaking to T.L., [Ms. B.] questioned each of her children individually. At the hearing, [Ms. B.] testified that when she spoke to A.L., she asked her if anyone had touched her inappropriately. At first, A.L. looked down and played with her fingers. [Ms. B.] explained to A.L. that she would call the police if anyone had touched her body. At that point, A.L. began to cry and said, "My dad." She eventually told [Ms. B.] that [Appellant] placed his "private" inside of her mouth and touched her with his fingers. The following morning, on the way to the hospital, A.L. also told [Ms. B.] that [Appellant] applied Vaseline to her "butt" and then tried to place his "private" inside. A.L. explained to [Ms. B.] that [Appellant] stopped when she cried.

[Ms. P.] testified that on August 13, 2015, while [Ms. B.] was on the phone with the police, she spoke to A.L. privately. [Ms. P.] asked A.L. if anybody had touched her private areas. A.L's initial response was to look down. She then said, "Yeah. My dad." Eventually, A.L. told [Ms. P.] that [Appellant] touched her "private parts" with his fingers and placed his "private areas" in her mouth. Following the testimony, this [c]ourt found that A.L.'s out-of-court statements were both reliable and relevant. The disclosures to [Ms. B.] and [Ms. P.] were the first made by A.L. following the incidents of abuse. Both statements, identifying [Appellant] and describing his actions, were relevant to establish the elements of the offenses with which [Appellant] was charged[.] Therefore, this [c]ourt properly allowed the admission of statements made by A.L. to [Ms. B.] and [Ms. P.] for use at trial.

Trial Ct. Op. at 8-10.

Based on our review of the record, we discern no abuse of discretion by the trial court in admitting A.L.'s hearsay statements under the Tender Years hearsay exception. *See Hunzer*, 868 A.2d at 510; *see also Curley*, 910 A.2d at 697. As noted previously, the trial court conducted an *in camera* hearing and had the opportunity to observe A.L., who immediately began crying when asked about Appellant. *See* N.T. Tender Years Hr'g, 1/10/18, at 4. Further, the trial court heard testimony from A.L.'s mother, Ms. B., who described A.L.'s demeanor when she disclosed the abuse. *Id.* at 13-19. Based on that testimony, the trial court concluded that A.L. "did suffer serious emotional distress [that] substantially impairs her ability to reasonably communicate." *Id.* at 11. Therefore, the trial court properly concluded that A.L. was unavailable for purposes of the Tender Years hearsay exception. *See Hunzer*, 868 A.2d at 510.

With respect to reliability, the trial court noted that Ms. B. and Ms. P. provided similar accounts regarding A.L.'s statements. *See* N.T. Tender Years Hr'g, 1/10/18, at 13-19, 43-46. Both witnesses used identical terminology to describe A.L.'s account of the abuse and also described A.L.'s fragile emotional state at the time of her disclosure. Under these circumstances, the trial court properly concluded that the content and circumstances of A.L.'s statements were sufficiently reliable. *See* 42 Pa.C.S. § 5985.1(a)(1)(i); *see also Hunzer*, 868 A.2d at 510. For these reasons, Appellant is not entitled to relief on this claim.

## Motion for a Mistrial

In his remaining claim, Appellant argues that the trial court erred by denying his motion for a mistrial based on statements by the prosecutor during her closing argument. Appellant's Brief at 35. Appellant contends that the Commonwealth engaged in "deliberate falsification of prejudicial and irrelevant evidence" by misrepresenting T.L.'s testimony. *Id.* Specifically, Appellant refers to the Commonwealth's statement that T.L. testified about "a time when she was in the room, [Appellant] came in, and he went straight for the bed, and he went under the covers." *Id.* at 36 (citing N.T. Trial, 1/12/18, at 70). Appellant contends that the Commonwealth intentionally mischaracterized T.L.'s testimony in order to "embellish the evidence regarding M.P.B. to make Appellant look guilty of something the Commonwealth could not prove." *Id.* Further, Appellant contends that "[b]y springing this argument on [A]ppellant when he had no chance to respond, other than with an objection, the prosecutor placed defense counsel in a 'heads I win, tails you lose' proposition." *Id.* at 37.

The Commonwealth responds that Appellant failed to preserve his instant claim at trial or in his Rule 1925(b) statement. Commonwealth's Brief at 36. The Commonwealth asserts that although Appellant moved for a mistrial after the Commonwealth's closing argument, he did so for different reasons than the ones he now asserts on appeal. *Id.* at 35-36. Further, the Commonwealth contends that although Appellant "objected during the portion of the prosecutor's argument about T.L.'s testimony, he did not request a

- 19 -

mistrial at that point on the record, and argument about the objection and the court's ruling were held at sidebar, off the record." ***Id.*** at 36. Therefore, the Commonwealth asserts that "[b]ased on the record and [Appellant's] Rule 1925(b) statement, the trial court had no way of responding to [Appellant's] claim of prosecutorial misconduct that he raises for the first time in his brief before this Court. The claim is therefore waived and unreviewable." ***Id.***

It is well settled that "[i]n order to preserve a claim of prosecutorial misconduct for appeal, a defendant must make an objection and move for a mistrial." ***Commonwealth v. Sasse***, 921 A.2d 1229, 1238 (Pa. Super. 2007).

Here, our review of the record confirms that although Appellant requested a mistrial after the Commonwealth's closing argument, he did so based on (1) M.P.B.'s behavior in the courtroom and (2) the witnesses' conduct in the courtroom during closing arguments. ***See*** N.T. Trial, 1/12/18, at 89-90. These assertions of error are different from Appellant's current claim of prosecutorial misconduct. Therefore, because Appellant did not properly preserve his instant claim before the trial court, it is waived. ***See*** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); ***see also Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa. Super. 2008) (reiterating than an appellate court cannot review a legal theory in support of a claim unless that particular legal theory was presented to the trial court). Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/23/2020*